FILED
2026 Sep-21 AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ERIC KEITH PATTERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 2:25-cv-01081-MHH** |
| **PATRICK B JENNINGS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Eric Keith Patterson has sued police officer Patrick B. Jennings, Judge Lee Barnes, Judge Laura Barnes, and the City of Springville, Alabama. (Doc. 1).[1] Mr. Patterson has filed an *in forma pauperis* affidavit and asks for permission to proceed without prepaying filing fees and costs. (Doc. 2).

***

Mr. Patterson's request for IFP status triggers a two-step inquiry. *Procup v. Strickland*, 760 F.2d 1107, 1114 (11th Cir. 1985). First, a district court must

[1] Mr. Patterson asserts claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (Doc. 1, pp. 1, 2–3). He also asserts a claim against Judge Laura Barnes for "Conflict of Interest and Bias". (Doc. 1, p. 3). He has sued the individual defendants in their individual and official capacities. (Doc. 1, p. 1).

examine the plaintiff's IFP affidavit and determine whether the plaintiff is economically eligible for IFP status under 28 U.S.C. § 1915(a). *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004). If the plaintiff is economically eligible for IFP status, then the district court must docket the case and move to step two. At step two, the district court must assess whether the allegations in the complaint meet the pleading standard under § 1915(e)(2). *Martinez*, 364 F.3d at 1307; *see also Mitchell v. Farcass*, 112 F.3d 1483, 1486 (11th Cir. 1997). Under 28 U.S.C. § 1915, a district court must dismiss a complaint if the factual allegations are "frivolous or malicious" or "fail[] to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). Additionally, "federal courts are duty bound to consider their subject matter jurisdiction *sua sponte.*" *Burr & Forman v. Blair*, 470 F.3d 1019, 1035 n. 38 (11th Cir. 2006) (citing *Univ. of S. Alabama v. Am. Tobacco Co.,* 168 F.3d 405, 409–11 (11th Cir. 1999)).

When reviewing a *pro se* complaint pursuant to § 1915, a district court must hold complaints written by *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Jacob v. Mentor Worldwide, LLC*, 40 F.4th 1329, 1334 (11th Cir. 2022). Though a district court must be lenient in its review of a *pro se* pleading, the court "cannot act as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted).

***

In his affidavit, Mr. Patterson states that he "is financially unable to pay the fees and costs associated with filing and prosecuting this federal civil rights action." (Doc. 2, p. 1, ¶ 1). Mr. Patterson asserts that he is "underemployed, has no substantial income or financial assets, and cannot afford to retain legal counsel." (Doc. 2, p. 1, ¶ 2; *see also* Doc. 2, p. 3, ¶ 2). He asserts that his "business suffered significant financial losses" following the COVID-19 pandemic and closed in September 2024. (Doc. 2, p. 3, ¶ 3). Mr. Patterson lost his vehicle in an accident, and "settlement negotiations" in litigation following the accident "are still ongoing." (Doc. 2, p. 3, ¶ 4). Mr. Patterson "do[es] not receive public assistance." (Doc. 2, p. 3, ¶ 2). Based on these representations, the Court grants Mr. Patterson's motion to proceed *in forma pauperis* and moves to step two of the § 1915 inquiry.[2]

***

Mr. Patterson's claims against the defendants rest on the following alleged facts: on October 14, 2024, Springville Police Officer Jennings cited Mr. Patterson for failure to register his "private automobile" under Alabama Code § 32-6-61, even though Mr. Patterson was "not engaging in commercial activity." (Doc. 1, pp. 1–2,

---

[2] Mr. Patterson did not use the IFP affidavit available on the Court's website and, therefore, did not provide all of the information that the Court ordinarily requires from applicant's for IFP status. *See In Forma Pauperis Affidavit*, U.S. DIST. CT. FOR THE N. DIST. ALA., *https://www.alnd.uscourts.gov/sites/alnd/files/Civil%20Pro%20Se%20In%20Forma%20Pauperis%20Affidavit%20Requesting%20an%20Attorney_1.pdf.*

¶¶ 5, 9–10). "The citation was issued without a verified complaint or identification of an injured party." (Doc. 1, p. 2, ¶ 11). Mr. Patterson appeared in Springville Municipal Court, and "Judge Lee Barnes entered a plea on [his] behalf without consent." (Doc. 1, p. 2, ¶¶ 12–13). Before trial, Mr. Patterson "lawfully declared and documented his status as an Alabama State National, with a U.S. passport card reflecting 5 asterisks," but "the court refused to recognize [his] political status or objections to jurisdiction and moved forward with prosecution." (Doc. 1, p. 2, ¶¶ 14–15).

Judge Lee Barnes's sister, Judge Laura Barnes, presided over Mr. Patterson's trial. (Doc. 1, p. 2, ¶ 18). During trial, Judge Laura Barnes and the prosecutor threatened to send Mr. Patterson to jail. (Doc. 1, p. 2, ¶ 16). Officer Jennings did not appear at trial, and Mr. Patterson moved to dismiss the case against him. (Doc. 1, p. 2, ¶ 17). Mr. Patterson alleges that he "was convicted despite multiple constitutional and procedural violations." (Doc. 1, p. 2, ¶ 19).

Mr. Patterson alleges that Officer Jennings violated his Fourth Amendment rights by stopping him and citing him without probable cause. (*See* Doc. 1, p. 2).[3] Mr. Patterson alleges that Judge Lee Barnes violated his Fourteenth Amendment

[3] In his claims against the individual defendants, Mr. Patterson has not identified which defendant or defendants committed the alleged violations of his constitutional rights. (*See* Doc. 1, pp. 2–3). Where feasible, the Court has construed Mr. Patterson's claims to challenge the conduct of specific defendants. Based on the allegations in Mr. Patterson's complaint, he has asserted his Fourth Amendment claim against Officer Jennings.

rights by unlawfully entering Mr. Patterson's plea. (*See* Doc. 1, p. 2). Mr. Patterson alleges that Judge Laura Barnes violated his Fourteenth Amendment rights because she conducted the trial despite a conflict of interest, and she did not dismiss the case when Officer Jennings did not appear. (*See* Doc. 1, pp. 2–3).[4] Mr. Patterson alleges that he "was punished for asserting his right to travel and exercising his First Amendment right of political self-identification." (Doc. 1, p. 2).[5] Mr. Patterson alleges that the City of Springville "failed to properly train or oversee officers and judges." (Doc. 1, p. 3). To redress these alleged violations of his rights, Mr. Patterson seeks a declaratory judgment, compensatory damages, and an injunction "preventing future abuse of travelers and state nationals." (Doc. 1, p. 3).

***

Judge Lee Barnes and Judge Laura Barnes are immune from Mr. Patterson's damages claims against them in their individual capacities. As the United States Court of Appeals for the Eleventh Circuit has explained:

> A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court. *See Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Dykes v. Hosemann*, 776 F.2d 942, 945 (11th Cir. 1985) (en banc). When we decide whether a judge enjoys absolute judicial immunity for a particular act, we ask whether the judge acted in his judicial capacity. *Dykes*, 776 F.2d at 945. We look at the nature

[4] Mr. Patterson also alleges that defendants violated his Fourteenth Amendment rights by "refus[ing] to acknowledge [his] status," but he has not explained which defendant or defendants committed this alleged constitutional violation. (*See* Doc. 1, p. 2).

[5] Mr. Patterson has not explained which defendant or defendants committed these alleged violations of his rights. (*See* Doc. 1, p. 2).

> and function of his act, not the propriety of the act itself, and consider whether the nature and function of the particular act is judicial. *Mireles v. Waco*, 502 U.S. 9, 13 (1991) (assessing "the particular act's relation to a general function normally performed by a judge"). For example, we ask not "whether civil incarceration was appropriate" in a specific case but instead "whether ordering civil incarceration is a judicial activity." *Sibley v. Lando*, 437 F.3d 1067, 1071 (11th Cir. 2005).
>
> A judge's motivation is irrelevant to determining whether his act was judicial. A judge enjoys absolute immunity for judicial acts regardless of whether he made a mistake, acted maliciously, or exceeded his authority. *Dykes*, 776 F.2d at 947.

*McCullough v. Finley*, 907 F.3d 1324, 1330–31 (11th Cir. 2018) (parallel citations omitted). In the Eleventh Circuit, courts "determine whether the nature and functions of the alleged acts are judicial by considering four factors," namely whether:

> (1) the precise act complained of is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity.

*McCullough*, 907 F.3d at 1331 (quoting *Dykes*, 776 F.2d at 946).

Here, the judges' challenged acts are normal judicial functions—entering plea agreements, evaluating a litigant's arguments, issuing orders, and conducting a trial. Mr. Patterson has not alleged that these acts took place outside of a courthouse, and these acts arose directly out of cases pending before the judges or visits to them in their official capacities. Mr. Patterson asserts that Judge Laura Barnes was affected by a conflict of interest, but acting under a conflict of interest does not deprive a

judge of absolute judicial immunity from claims for damages. *See Jallali v. Florida*, 404 Fed. Appx. 455, 456 (11th Cir. 2010) (affirming district court's dismissal of claim against law clerk on judicial immunity grounds despite plaintiff's allegation that law clerk had a conflict of interest); *see also McCullough*, 907 F.3d at 1331 (citation omitted) (indicating that a "judge enjoys absolute immunity for judicial acts regardless of whether he made a mistake, acted maliciously, or exceeded his authority").

A judge is liable for judicial acts only if the judge "acted in the 'clear absence of all [subject-matter] jurisdiction.'" *Stump*, 435 U.S. at 357 (quoting *Bradley v. Fisher*, 80 U.S. 335, 352 (1871)). This narrow exception focuses on whether a court has power to hear cases of a given type rather than whether the court properly exercised jurisdiction in a given context. *See Stump*, 435 U.S. at 357–60 & n.7. The state court judges had jurisdiction over the alleged state-law infractions in the underlying case. Some of Mr. Patterson's allegations indicate that he may identify as a sovereign citizen.[6] An individual's self-identification as a sovereign citizen does not provide a basis for the individual to challenge a court's jurisdiction. *See*

---

[6] Mr. Patterson alleges that he "lawfully declared and documented his status as an Alabama State National, with a U.S. passport card reflecting 5 asterisks," but that the state court "refused to recognize" his "objections to jurisdiction." (Doc. 1, p. 2, ¶¶ 14–15). "Sovereign citizens believe the USG [United States Government] is illegitimate and has drifted away from the true intent of the Constitution. . . . Individuals who adhere to this ideology believe their status as a sovereign citizen exempts them from US laws and the US tax system." *United States v. Williams*, 29 F.4th 1306, 1308 (11th Cir. 2022) (alteration in original) (citation omitted).

*United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (citations omitted). Mr. Patterson has not alleged how either judge acted in the absence of all jurisdiction. Thus, judicial immunity bars Mr. Patterson's damages claims against Judge Lee Barnes and Judge Laura Barnes in their individual capacities.

***

Mr. Patterson's claims against Judge Lee Barnes and Judge Laura Barnes in their official capacities for declaratory and injunctive relief fail under the Federal Courts Improvement Act. Through that legislation, Congress "amended § 1983 to provide that 'injunctive relief shall not be granted' in an action brought against 'a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable.'" *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (quoting Pub. L. No. 104–317, 110 Stat. 3847 (1996)). Mr. Patterson does not allege that Judge Lee Barnes or Judge Laura Barnes violated a declaratory decree.

***

As noted, Mr. Patterson alleges that Officer Jennings stopped and cited him "without lawful cause" in violation of the Fourth Amendment. (*See* Doc. 1, p. 2, ¶¶ 9–11; Count I). "The Fourth Amendment [generally] prohibits government officials from detaining a person in the absence of probable cause," *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017), but to justify a traffic stop, "officers need only

'reasonable suspicion'—that is, 'a particularized and objective basis for suspecting the particular person stopped' of breaking the law," *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citation omitted). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (citation omitted). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). An officer's reasonable suspicion may be founded upon a mistake of law. *See Heien*, 574 U.S. at 57 ("The question presented is whether such a mistake of law can nonetheless give rise to the reasonable suspicion necessary to uphold the seizure under the Fourth Amendment. We hold that it can.").

Here, Mr. Patterson alleges that Officer Jennings stopped him and issued him a citation under Alabama Code § 32-6-61 for failing to register his "private automobile," despite Mr. Patterson "not engaging in commercial activity." (Doc. 1, p. 2, ¶¶ 9–10). Mr. Patterson also complains that Officer Jennings issued the citation "without a verified complaint or identification of an injured party," (Doc. 1, pp. 2, 11). Alabama Code § 32-6-61 applies to all cars, including "all owners of private passenger vehicles." Mr. Patterson has not alleged that his vehicle registration was

current.[7] Nor has Mr. Patterson pleaded facts that would suggest that Officer Jennings lacked reasonable suspicion that the vehicle registration was expired. Alabama license plates include the date the vehicle's registration expires. A police officer generally has reasonable suspicion to stop a vehicle when non-compliance with a state's vehicle registration laws is obvious from the license plate. *See, e.g.*, *United States v. DeJesus*, 435 Fed. Appx. 895, 896–97, 899–900 (11th Cir. 2011) (finding Alabama state trooper had probable cause to stop driver when temporary tag did not clearly identify a state of origin or date of expiration as required by Alabama law, even though the temporary tag was actually valid under reciprocity agreement with Texas); *United States v. Hires*, 282 Fed. Appx. 771, 773 (11th Cir. 2008) (holding an officer was justified in conducting a traffic stop because he "had probable cause to believe the license tag on that car did not comply with [a] statutory requirement because it was unreadable, or had possibly expired"); *United States v. Jennings*, 280 Fed. Appx. 836, 840 (11th Cir. 2008). Thus, Mr. Patterson has failed to state a claim for relief against Officer Jennings under the Fourth Amendment.

***

[7] An individual with a last name beginning with "P" must register his or her vehicle in July. ALA. CODE § 32-6-61. Regardless of an individual's last name, an individual must register "trucks, commercial and fleet vehicles" in October or November. ALA. CODE § 32-6-61. Thus, Mr. Patterson would have had more time to reregister his car, not less, had he been operating a commercial vehicle.

With respect to Mr. Patterson's claims against the City of Springville, "municipal entities may be held liable under § 1983 only where 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1370 (11th Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "This standard requires a plaintiff to show that (1) 'his constitutional rights were violated'; (2) 'the municipality had a custom or policy that constituted deliberate indifference to that constitutional right'; and (3) 'the policy or custom caused the violation.'" *Plowright*, 102 F.4th at 1370 (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). As explained, Mr. Patterson has not alleged an actionable Fourth Amendment violation concerning his interaction with Officer Jennings. Therefore, Mr. Patterson has failed to state a claim against the City of Springville.

***

Because Ms. Patterson has not asserted a claim against a defendant upon which a federal court may grant relief, the Court dismisses Mr. Patterson's claims under 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). The Clerk of Court shall please TERM Doc. 2 as moot and close this case.

The Clerk of Court shall please mail a copy of this order to the mailing address Mr. Patterson has provided.

**DONE** and **ORDERED** this September 21, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE